Francisco Díaz, demandante y apelado, *v.* Antonio Ema-nuelli y Ramón Cancel, demandados y apelante el úl-timo.

Núm. 8625.—*Sometido:* Marzo 18, 1943. *Resuelto:* Mayo 5, 1943.

890

*Rodríguez & Parga,* abogados del apelante; *Harry B. Llenza,* abo‐
gado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tri‐
bunal.

El demandante poseía a' virtud de un contrato de arren‐
damiento tres fincas colindantes entre sí, que en adelante
llamaremos "la finca", las cuales durante la vigencia de
dicho contrato fueron vendidas por su dueño y arrendador,
Antonio Emanuelli, al otro demandado Ramón Cancel. En
la demanda enmendada se reclaman tres distintas partidas
de daños, expuestas separadamente bajo tres causas de ac‐
ción. Bajo la primera se reclaman $650, de ellos $545 por
concepto de frutos pendientes que según el demandante no
pudo recolectar por impedírselo con su conducta el deman‐
dado Cancel; $25 valor de una casa construída en la finca
por el demandante y $80 importe de ciertas cercas de alam‐
bre también puestas por él. Bajo la segunda causa de acción
reclama $150 por concepto de daños a cierto ganado que el
demandante tenía en la finca; y bajo la tercera, $1,000 por
sufrimientos y angustias mentales del demandante con mo‐
tivo de la pérdida de los frutos y del mal trato a que fué
sometido el ganado.

La demanda fué dirigida contra Ramón Cancel como com‐
prador y Antonio Emanuelli como vendedor de la finca arren‐
dada; pero habiendo fallecido Emanuelli, fué sustituído por
su sucesión, a la que por no haberse personado en autos le
fué anotada la rebeldía.

El 10 de diciembre de 1940 la corte inferior dictó senten‐
cia desestimando la demanda en cuanto a la sucesión de An‐
tonio Emanuelli y declarándola con lugar en cuanto a Ra‐
món Cancel, a quien condenó a pagar al demandante la can‐
tidad de $800 en que estimó alzadamente los daños reclama-

dos en las tres causas de acción, imponiéndole además las costas. En la relación de hechos y opinión que sirvió de base a la sentencia, la corte expuso así sus conclusiones:

"A virtud de las admisiones del demandado Sr. Cancel en su contestación y de la prueba practicada, se consideran probados los siguientes hechos: que don Antonio Emanuelli, en 8 de septiembre de 1936, dió en arrendamiento al demandante Sr. Francisco Díaz las fincas que se describen en la demanda, por el término de cinco años a partir del día primero de octubre de 1936, por el canon de $125 anuales, de cuyo canon el demandante satisfizo dos anualidades por adelantado, y cuyas fincas fueron vendidas el día 7 de abril de 1938 por don Antonio Emanuelli al aquí demandado don Ramón Cancel, en cuya fecha y a virtud del citado contrato de arrendamiento, se encontraba el demandante disfrutando de las mismas, en las que tenía sembradas siete cuerdas de malanga, yautía y ñame, y tenía también en las mismas once cabezas de ganado; que en mayo 10 de 1938 el demandado Sr. Cancel le concedió al demandante hasta el día 8 de septiembre de dicho año para desocupar dichas fincas y para que tuviera tiempo suficiente de cosechar todo lo sembrado en ellas; que el demandante y el demandado Sr. Cancel no pudieron ponerse de acuerdo en cuanto a la tasación y valor de los frutos sembrados en las fincas y de las mejoras existentes en las mismas, razón por la cual, en 23 de septiembre de 1938, el demandado Sr. Cancel se dirigió al demandante informándole que necesitaba el cercado donde se encontraba el ganado del demandante, porque iba a arar el mismo, y había decidido poner dicho ganado en una parcela de dos cuerdas hasta que el demandante se decidiera a llevárselo, advirtiéndole que en dicha parcela no había agua y que el Sr. Díaz debería mandar alguna persona a darle agua a dicho ganado durante los días que estuviese en dicha parcela, informándole además el Sr. Cancel al Sr. Díaz que dichas once cabezas de ganado no podían estar en dicha parcela por mucho tiempo sin sufrir hambre; que el Sr. Cancel achiqueró el ganado del demandante en dos cuerdas de terreno, donde lo tuvo en esas condiciones por espacio de once días transcurridos los cuales, con la ayuda de la Policía Insular, lo sacó de esa parcela de dos cuerdas y lo llevó a casa del demandante; que el referido ganado, antes de ser achiquerado, y mientras estaba libremente en las fincas poseídas por el demandante no carecía de hierba ni de agua, ya que un río pasaba bastante cerca del sitio donde pastaban dichos animales, y que durante el tiempo que estuvo achiquerado lo hacían caminar diariamente alrededor de cuatro kilómetros para darle agua; que como

consecuencia de la forma tan negligente en que fué atendido el ganado durante los días en que estuvo achiquerado el mismo perdió de peso y de valor, muriendo una yegua y una novilla; que el demandante tenía sembradas en la finca, allá por el mes de septiembre de 1938, cuatro cuerdas de malanga, cuerda y media de yautía y ñame y media cuerda de batata, siembras que fueron destruídas por el demandado Sr. Cancel al tomar posesión de la finca. Cuando Emanuelli vendió a Cancel las fincas arrendadas al demandante, éste estaba en posesión de las mismas y lo estuvo en todo momento hasta que fué despojado de ellas por los actos del demandado Cancel, quien no tenía derecho a actuar en la forma que lo hizo, sin respetar el derecho de posesión del demandante.

"El derecho del demandado Cancel a dar por terminado el contrato celebrado entre el demandante y don Antonio Emanuelli es tan claro como el derecho del demandante a recoger los frutos de la cosecha correspondiente al año agrícola corriente y a ser indemnizado por el vendedor Emanuelli por los daños y perjuicios que se le causasen (Art. 1461 Código Civil), pero ese derecho no autorizaba a Cancel a introducirse en las fincas y apoderarse de las mismas y mucho menos a tomarse la justicia por su mano, utilizando la policía para sacar el ganado de las fincas entregándoselo al demandante. Si estos actos se permitieran y toleraran estaría de más la Ley de Desahucio, que fué letra muerta para el demandado Cancel, y podrían los dueños de propiedades urbanas o rústicas, con la ayuda de la Policía Insular, echar a la calle a las personas que por cualquier concepto estuviesen en posesión de las mismas, destruyéndose así toda la estructura de nuestro sistema de gobierno."

¿Tiene derecho el demandante a todas o cualquiera de las tres partidas de los daños que reclama?

Los términos en que está redactada la opinión de la corte inferior revelan que el juez se dejó impresionar adversamente al demandado por el hecho de que para tomar posesión de la finca comprada por él, no estableció previamente una acción de desahucio contra el arrendatario demandante, y por la circunstancia adicional de haber utilizado los servicios de un policía insular para que acompañase a sus peones en la conducción y entrega del ganado al demandante. De ahí que diga la corte en su opinión: "Pero ese derecho (el de dar por terminado el contrato) no autorizaba a Can-

cel a introducirse en las fincas y apoderarse de las mismas y mucho menos a tomarse la justicia por su mano, utilizando la policía para sacar el ganado de la finca, entregándoselo al demandante.'' (Paréntesis nuestro.)

De la prueba resulta concluyentemente que el demandante no vivía en la finca; que el demandado le había dado de término desde el 8 de abril hasta el 8 de septiembre de 1938 para recoger sus frutos y abandonar la finca, y que ello no obstante al ir a tomar posesión de ella el demandado el 15 de septiembre de 1938, el demandante no había recolectado sus frutos, no se hallaba allí para entregársela, ni había sacado de la misma el ganado en cuestión. Resulta además que el demandado tampoco encontró resistencia alguna por parte del demandante o sus empleados. No alega el demandante haber sufrido perjuicio alguno porque el demandado tomase posesión sin antes obtener su consentimiento. Si bien el Lic. Soto Rivera, abogado del demandante, sugirió al demandado que presentase una acción de desahucio contra el primero, ese desahucio, según declaró dicho abogado, tenía por único objeto conseguir que dentro de dicho procedimiento se tasasen los frutos pendientes que el demandante tenía en la finca. Es verdad que nadie debe tomarse la justicia por sus manos. La razón de ese principio legal es evitar la consiguiente alteración de la paz al actuar por la violencia en el ejercicio de un derecho. Pero cuando la parte contra quien se ejercita no ofrece resistencia alguna, no existe la necesidad de recurrir a los tribunales de justicia para que declaren la existencia de un derecho que nadie ha impugnado.

Es también impertinente a las acciones ejercitadas por el demandante el hecho de que el demandado consiguiese que los peones que condujeron el ganado fuesen acompañados de un policía insular. No hay alegación alguna al efecto de que dicho policía realizase acto ilegal alguno contra el demandante ni contra ninguna otra persona, limitándose su actuación a acompañar a los peones del demandado.

■ El juez inferior invoca el artículo 1461 del Código Civil para exaltar el derecho del arrendatario a recoger los frutos de la cosecha que corresponde al año agrícola corriente; pero no tiene en cuenta que ese derecho del arrendatario debe ejercitarse de forma que sin menoscabo al mismo, no perjudique innecesariamente el derecho que también tiene el comprador del inmueble a gozar del uso y disfrute de su propiedad. El citado artículo dice así:

"Art. 1461. El comprador de una finca arrendada tiene derecho a que termine el arriendo vigente al verificarse la venta, salvo pacto en contrario y lo dispuesto en la ley hipotecaria.

"Si el comprador usare de este derecho, el arrendatario podrá exigir que se le deje recoger los frutos de la cosecha que corresponda al año agrícola corriente y que el vendedor le indemnice los daños y perjuicios que se le causen."

El contrato de arrendamiento no se formalizó en escritura pública y claro es que no pudo inscribirse en el registro de la propiedad. [3] Por consiguiente, era indiscutible el derecho del comprador, de acuerdo con el citado artículo, a terminar el arriendo vigente al verificarse la venta el 7 de abril de 1938. Así lo hizo en efecto, notificándolo verbalmente al demandante al ir a tomar posesión de la finca el 8 de abril de 1938, y enterarse por el propio demandante que éste la estaba poseyendo a virtud de un contrato de arrendamiento cuyo término natural no debería expirar hasta el 30 de septiembre de 1941. [4] Observando que el demandante tenía pendiente de recolección los frutos descritos, le concedió entonces, verbalmente, de su propia iniciativa, que permaneciese en la finca con ese objeto hasta el 8 de septiembre de 1938, concesión que confirmó después por carta de 10 de mayo de 1938 dirigida por sus abogados al demandante. (*Exhibit* núm. 4 del demandante.)

El 15 de septiembre de 1938, cuando el demandado tomó posesión de la finca, el demandante no había recolectado sus frutos. Insistía en que el demandado le pagase por ellos una cantidad que éste, que no tenía interés en los mismos,

onsideraba en extremo exagerada. A pesar de esa actitud el demandante, el demandado con fecha 23 de septiembre le 1938 espontáneamente le concedió una prórroga adicional le siete meses a partir de la fecha últimamente indicada, para recolectar los frutos, prórroga que se consignó en la carta que el propio demandante presentó en evidencia, marcada como exhibit 6 del demandante, y que dice así:

"23 de septiembre de 1938. Lcdo. José Soto Rivera, Calle Loíza Núm. 17, Parada 17, Santurce. Estimado señor y amigo: Tengo a la vista la tasación que presenta el señor Díaz de la plantación que tiene en mi finca y en vista de lo exagerado de la misma no vale la pena considerarla, ya que es cosa segura que yo no tengo absolutamente ningún interés en esos frutos. Con ese motivo, he decidido informarle a usted para que así lo haga saber al señor Díaz, que yo estoy dispuesto a permitirle que recoja esos frutos en su oportunidad a fin de que obtenga en ellos el mayor beneficio. Para la recolección de esos frutos estoy dispuesto a concederle un término de siete meses a partir de esta fecha, ya que yo considero ese tiempo más que suficiente para que esos frutos lleguen a su estado de madurez. Quiero advertirle que para esto es indispensable que el señor Díaz se lleve el ganado que tiene en la finca antes del día primero del próximo mes de octubre. De usted con toda consideración (fdo.) Ramón Cancel Rodríguez."

De conformidad con la prueba del propio demandante, el demandado le concedió en total un año para recolectar los frutos que estaban pendientes al celebrarse el contrato de compraventa. No aparece de la prueba que el demandante en momento alguno tratase de recolectarlos, insistiendo siempre en que el demandado le pagase por ellos la cantidad en que él los había tasado. El demandado no venía obligado en tales circunstancias a comprar los frutos. Tampoco a dejar indefinidamente la finca ocupada por las siembras del demandante. El derecho de este último a recolectar sus frutos está limitado, como hemos dicho, por el que tiene el demandado al goce y disfrute de su propiedad. Si estos frutos fueron después de dicho término utilizados por los medianeros, frutos que según aquéllos y el propio demandante, con ex-

cepción de las malangas, habían sido sembrados a medias por los medianeros, cúlpese a sí mismo el demandante que, mal aconsejado sin duda, no hizo uso de su derecho; pero no pretenda reclamarlos al demandado que hizo en su beneficio más de lo que legalmente estaba obligado a hacer.

■ En lo que respecta al alambre y a la casa, de la declaración del demandante resulta que en las cercas gastó $80, y construyó una casa que fué tasada en $25 (T. de E. 10–11). En cuanto a las cercas, el propio demandante declaró que el demandado había destruído la que él (el demandante) tenía, para poner cercas nuevas (T. de E. 35). El testigo del demandado Juan Delgado declaró que la cerca que ahí había en tiempo del demandante era una cerca de mayas y un alambre viejo (T. de E. 114). El testigo del demandado Ramón Esquilín declaró además que el demandado tuvo que cercar la finca porque no tenía cerca (T. de E. 86). Respecto a la casa, valorada en $25, aparece de la prueba que se trata de un bohío de paja levantado allí por el que lo habitaba, el medianero que fué del demandante primero y del demandado después, Fidel García, quien declaró que ni siquiera los pedazos de tabla que usó en la construcción del bohío pertenecían al demandante. Y si examinamos la opinión de la corte sentenciadora, veremos que estas partidas de daños no figuran entre los hechos que estimó probados. Pero en el supuesto de que en efecto los hubiera probado, tales daños no eran reclamables a Ramón Cancel, sino al anterior dueño Antonio Emanuelli o a su sucesión. A este efecto se dijo por el Tribunal Supremo de España en Sentencia de 7 de enero de 1889, 65 Jurisprudencia Civil 43, 46:

" . . . y principalmente porque si el recurrente se creía con derecho a las mejoras que hubiera realizado cuando la finca pertenecía a otro dueño, debió ejercitar su acción contra el antiguo propietario, que sería en todo caso el obligado a su abono, a menos que constase, y nada se ha probado sobre este extremo, que tal obligación se había transferido al nuevo adquirente."

▆ A nuestro juicio, los daños reclamados en la primera causa de acción no han sido probados. Tampoco existen los reclamados bajo la segunda causa de acción. El demandante no tenía derecho a mantener indefinidamente su ganado en la finca del demandado. El artículo 1461 del Código Civil, como hemos visto, concede al arrendatario el tiempo que la ley estima razonable para cosechar sus frutos, pero ningún derecho le concede a mantener su ganado en la finca después que el comprador, haciendo uso del derecho que le concede dicho precepto legal, termina el contrato de arrendamiento. En este caso el demandado concedió al demandante el derecho de permanecer en la finca hasta el 8 de septiembre de 1938 y para esa fecha debió haber sacado de allí el ganado. Ello no obstante, no fué hasta el 4 de noviembre de 1938, conforme resulta de la demanda enmendada, que el ganado fué sacado por el demandado y entregado al demandante. Pero aparte de estas consideraciones, el demandante no probó que sufriera menoscabo alguno el ganado. En el examen directo declaró que habían muerto una yegua y una novilla. Pero la muerte de estos animales, según su propia declaración, tuvo lugar un mes después de estar en su poder el ganado, y del examen de repreguntas resultó que él no llamó a un veterinario o a otra persona entendida en la materia para determinar cuál fué la causa de la muerte de dichos animales, y lo que es más, no presentó prueba alguna con respecto al valor de los mismos.

En lo que hace al resto del ganado, sólo se limitó a decir que se había rebajado en peso, sin intentar especificarlo, y que lo sabía por el "semblante" de los animales, pero admitió que no lo había pesado ni al abandonar la finca ni al recibirlo del demandado. Aun asumiendo que hubiese presentado dicha prueba, el único responsable de la pérdida fué el propio demandante que no tomó las medidas procedentes para proteger su propiedad.

▆ La reclamación de los daños y perjuicios objeto de la tercera causa de acción es manifiestamente improcedente.

En la hipótesis de que pudieran reclamarse daños por la angustias y sufrimientos morales causados por la pérdida d propiedad susceptible de ser indemnizada en dinero, no vé mos cómo podrían reclamarse tales daños en casos como e presente en que se absuelve al demandado de toda respon sabilidad por los daños materiales. Pero aun si así fuera el Tribunal Supremo de España, interpretando el artícul 1571 del Código Civil español, idéntico al 1461 del nuestro en Sentencia de 3 de noviembre de 1892 (72 J. C. 324) resol vió que el arrendatario sólo puede exigir en el caso a qu se refiere el segundo párrafo de este artículo, los daños perjuicios que realmente se le causen, sin que pueda exten der su petición a otra cosa. Y el artículo 1058 de nuestro Código Civil prescribe que "fuera de los casos expresament mencionados en la ley, y de los en que así lo declare la obli gación, nadie responderá de aquellos sucesos que no hubie ran podido preverse, o que previstos, fueran inevitables.' Difícil, si no imposible, es prever que el demandante fuese de una susceptibilidad tan extraordinaria que los daños que alega le causó el demandado le produjeran sufrimientos ta les al extremo de enfermarse tres meses después de haberse hecho cargo de la finca el demandado y debilitarse su orga nismo "porque no podía comer debido a los sufrimientos." Parece conveniente citar, por vía de ilustración, el caso de *González Mena* v. *Dannermiller Coffee Co.*, 48 D.P.R. 608, donde resolvimos, aplicando el principio establecido en el artículo 1058 supra, que en una acción basada en incumpli miento de contrato, el demandado es responsable solamente de las consecuencias que se originen directamente de dicho incumplimiento y previstas o podidas prever por los contra tantes cuando se celebró el contrato, que puedan derivarse de la falta de cumplimiento, y que siendo ello así, las angus tias mentales no son daños a ser indemnizados en dicha ac ción.

No debemos cerrar esta opinión sin insistir en la conveniencia y necesidad de que en casos como el presente,

n que se solicitan distintas partidas de daños, si se conceden en todo o en parte por la corte sentenciadora, debe especificarse por lo menos en la opinión, la cantidad concedida por concepto de cada partida. De esa forma, al revisarse el caso en apelación, si procediere modificar la sentencia por haberse concedido daños que no procedían, podrá este Tribunal saber con certeza qué cantidad concedió la corte inferior por la partida o partidas a que el demandante tenga derecho.

*Procede por lo expuesto revocar la sentencia apelada y dictar otra declarando sin lugar la demanda, con costas al demandante.*