JAVIER SOEGARD, demandante y recurrido, *v.* CONCRETERA NACIONAL, INC., demandada y recurrente; OTTO GONZÁLEZ YDRACH, demandante y recurrido, *v.* CONCRETERA NACIONAL, INC., demandada y recurrente.

*Número:* 409     *Resuelto:* 25 de abril de 1963

*Alberto Picó* y *Francisco A. Rosa Silva,* abogados de la recurrente; *Juan Nevares Santiago,* abogado de J. Soegard y *G. Wiscovitch,* abogado de Otto González Ydrach.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Allá para el mes de octubre de 1957 la Concretera Nacional, Inc., y Javier Soegard, convinieron en un contrato por virtud del cual la demandada-recurrente Concretera Nacional, Inc., se comprometió a servirle al aquí demandante-recurrido Javier Soegard, 84 yardas cúbicas de hormigón preparado con una resistencia de 3,000 libras. Dicha entrega se efectuaría en el Barrio Palmer de Río Grande, lugar éste donde Javier Soegard construía un edificio con el propósito de trasladar su negocio mixto de mercancía seca, provisiones y materiales de construcción conocido como "La Tienda Grande".

La demandada-recurrente sirvió 79 yardas cúbicas de hormigón en el lugar convenido durante la mañana y la tarde del día 18 de octubre de 1957. A su vez el demandante-recurrido pagó a la Concretera Nacional, Inc., mediante cheque, la cantidad de mil quinientos ochenta dólares ($1,580), valor éste, del hormigón entregádole. Al día siguiente el demandante notó que el hormigón no había fraguado en algunas partes del techo por lo que procedió a informárselo a la Concretera Nacional, Inc., por conducto de su tesorero, Sr. Domenech. Éste observó la loza del techo unos días más tarde y autorizó que se hicieran ciertas pruebas de carga y presión, con cargo a la demandada. A todo esto el Sr. Soegard, solicitó de su banco la suspensión del pago del cheque a que ya nos hemos referido. Practicadas las pruebas en la loza del techo el resultado de las mismas fue deficiente procediendo el Sr. Soegard a destruir todo el techo y a construirlo nuevamente de acuerdo como indican las normas del campo de la construcción. Para cobrar los gastos incurridos al realizar esta operación y la consiguiente pérdida por el no uso del

local el demandante-recurrido Sr. Soegard, interpuso la demanda que dio lugar a este pleito. Igualmente interpuso demanda contra la Concretera Nacional, Inc., el ingeniero Otto González Ydrach por haberse afectado su reputación como profesional y por los daños morales y mentales sufridos por éste. González Ydrach había diseñado el edificio en construcción del Sr. Soegard y además era el ingeniero supervisor de la obra. Los casos fueron consolidados.

El tribunal de primera instancia después de oir la prueba de ambas partes determinó como cuestión de hecho lo siguiente:

"Notificada la demandada de lo ocurrido por conducto de su Tesorero, señor Domenech, prometió éste ir a la obra y fue durante la siguiente semana autorizando se hicieran ciertas pruebas de carga y presión con cargo a la demandada.

"Practicadas dichas pruebas el resultado fue, que de los nueve paños o secciones de la loza del techo, los que aparecen marcados con los números 2 y 3 (Exh. 1) no dieron la resistencia de 3,000 libras y sí solamente de 763 libras.

"Debido a que el techo en esas partes no resistía la carga se procedió a destruirlo totalmente, como era lo más aconsejable y seguro y rehacerlo a un costo tal de $6,225.20 (Exh. 4).

"La destrucción y reconstrucción de vigas y techo demoró la obra que estaría terminada para diciembre 15, 1957 hasta fines de marzo de 1958, para el demandante Javier Soegard trasladar su establecimiento de mercancía seca, provisiones y materiales de construcción.

"El demandante Javier Soegard, no pudo utilizar el local en construcción, nuevo y más amplio, para la época de Navidades, tuvo necesidad de cancelar órdenes por valor de $15,000.00 y almacenar mercancía ya servida por valor de $20,000.00 que le dejaba un 20% de beneficio.

"El demandante Javier Soegard, pagó la suma de $700.00 por las pruebas que se hicieron a solicitud y con cargo a la demandada (Exh. 2).

"La labor de vaciar el hormigón llevado a la obra en camiones de la demandada duró desde las 7:30 A.M. hasta las 5:30 P.M. sin interrupción, ya que el almuerzo fue servido por el deman-

dante en la obra y almorzaban por turnos los obreros que traba-
jaron ese día, incluyendo los de la demandada.

"El demandante Javier Soegard, ha incurrido en gastos y
demoras en la construcción y terminación de la obra debido a
que el hormigón servido por la demandada ya estaba 'quemado'
o fraguado en el momento de usarse por haber sido preparada
la mezcla en seco con más de hora y media de anticipación a
ese momento, y hubo que añadir una cantidad de agua en exceso
a la necesaria para que la mezcla diera la resistencia requerida
en esa parte de la obra.

"El demandante dejó de percibir beneficios en su negocio con
motivo de la tardanza en la terminación de la obra por la suma
de $4,000.00.

". . .

"No podemos concluir que el demandante Otto González
Ydrach haya sufrido daños en su reputación como Ingeniero
Civil. La prueba demuestra una caprichosa inferencia de respon-
sabilidad por personas particulares al demandante Otto González
Ydrach por la demolición de la obra que había diseñado y super-
visaba. Solamente ha estado expuesto a la incomodidad o sufri-
miento moral que se ocasiona al saber que la obra diseñada por
él tuvo que ser demolida por culpa de la demandada."

En sus conclusiones de derecho el tribunal de primera
instancia dictaminó que una persona tiene derecho a reclamar
daños por sufrimientos mentales ocasionados por la culpa
o negligencia de otra. A tal efecto condenó a Concretera Na-
cional, Inc., a satisfacer al demandante Otto González Ydrach
la suma de $500.00 por daños morales y mentales sufridos con
motivo de los hechos a que se refieren las anteriores conclu-
siones de hechos. Igualmente condenó a la Concretera Na-
cional, Inc., a satisfacer al demandante Javier Soegard, Inc.,
las siguientes sumas:

"1. Seis mil doscientos veinticinco dólares con veinte centavos
($6,225.20) por la destrucción y reconstrucción de las vigas y
techo, incluyendo materiales y mano de obra.

"2. Cuatro mil dólares ($4,000.00) por los daños y perjuicios
ocasionados al demandante por la demora ocasionada en la termi-
nación de la obra.

"3. Setecientos dólares ($700.00) pagados por el demandante Javier Soegard por las pruebas ordenadas por la demandada.

"Se condena a la demandada a satisfacer las costas, y mil dólares de honorarios de abogado que se dividirán en $800 para honorarios del abogado del demandante en el caso #58-131 y $200 para honorarios del abogado en el caso #58-3014."

■ La recurrente señala la comisión de ocho errores y discute conjuntamente los dos primeros por estar relacionados entre sí. Sostiene que al concluir el tribunal sentenciador que "debido a que el hormigón servido por la demandada ya estaba 'quemado' o fraguado en el momento de usarse por haber sido preparada la mezcla en seco con más de hora y media de anticipación a ese momento, y hubo que añadir una cantidad de agua en exceso a la necesaria para que la mezcla diera la resistencia requerida en esa parte de la obra" dicho tribunal dio crédito a la prueba de dicha demandada y debió en su consecuencia, declarar sin lugar la demanda. Asume que el tiempo que tardaron los camiones en obtener su turno para mezclar el concreto y servirlo, se debió a la lentitud y mala organización de los empleados y trabajadores de la obra, y a la interrupción en el vaciado del concreto, ordenada por el maestro de la obra a la hora del almuerzo. Parte de una premisa errónea. Hay prueba en récord, presentada por la parte demandante, que tiende a establecer que el trabajo realizado en la torta se llevó a cabo sin interrupción desde que se comenzó a vaciar el concreto hasta que se terminó y que dicha labor se realizara normalmente y sin que los representantes de la obra se percataran en aquel momento de que el concreto servido tuviera características distintas a las normales de ese producto cuando está en buen estado de uso. Si bien es cierto que el tribunal concluyó errónea-mente que hubo que añadirle agua en exceso al concreto para que diera la resistencia necesaria, no implica ello que dicho tribunal aceptara que fue el maestro de obra el que dio la orden para que se añadiera agua a la mezcla. Hay prueba en el sentido de que se añadió agua en exceso, porque

el concreto estaba fraguado o quemado, pero en cuanto a quién fue la persona que dio la· orden a ese efecto, la prueba es conflictiva. El tribunal sentenciador, al dictar sentencia en contra de la demandada la culpó por los daños sufridos por los demandantes. De haber concluido dicho tribunal que el agua añadida en exceso lo fue a iniciativa y órdenes del dueño de la obra o de sus representantes, la hubiera exonerado de responsabilidad a tenor con las estipulaciones y condiciones del contrato de compraventa que clara y expresamente disponían que al ordenarse añadir agua, ello sería bajo instrucciones concretas y específicas del dueño, contratista o representante en la obra, quedando en ese caso relevada de responsabilidad la vendedora del concreto. Resulta evidente que el tribunal sentenciador no dio crédito a la prueba presentada por la demandada con el propósito de establecer que se añadió agua en exceso a la mezcla por instrucciones del maestro de obra. No se cometieron los dos primeros errores y no habiendo el tribunal creído que el maestro de obra ordenó que se añadiera agua a la mezcla, tampoco se cometió el tercero.

El cuarto error está predicado en que el tribunal sentenciador no tomó en cuenta los actos negligentes del demandante Soegard en relación con el retraso indebido de la entrega del hormigón y al causar que el mismo se fraguara, así como al añadirle agua y manejarlo indebidamente y no tener la debida inspección por un ingeniero o técnico competente.

La prueba en cuanto a estos extremos fue conflictiva también y el conflicto fue resuelto en contra de la demandada. La prueba de la parte demandante, creída por el juzgador es suficiente para sostener la determinación de que la demandada es responsable de los daños sufridos por Soegard. El error no fue cometido.

▪ La partida de $4000 concedida a Soegard como daños por la alegada demora en terminarse la obra, es objeto del quinto señalamiento de error. La concesión de dicha partida se basó en que el demandante Soegard tuvo que cancelar

órdenes por $15,000 y además tuvo que almacenar mercancía ya servida por valor de $20,000 que le dejaba un 20% de beneficio.

En verdad estos daños son de naturaleza incierta y especulativa y no hay prueba en el récord para justificar su existencia. Convenimos con la recurrente en la siguiente argumentación:

"El Tribunal sencillamente aplicó el veinte por ciento (20%) a los veinte mil dólares ($20,000.00) y obtuvo la cifra de cuatro mil dólares ($4,000.00) que le concedió al demandante Soegard. No se presentó prueba de que la mercancía así 'almacenada' no se vendiera después, dejando el mismo rendimiento del veinte por ciento (20%). No se presentaron los libros de contabilidad de la tienda del demandante para demostrar cuál era su beneficio en años anteriores, ni se ofreció evidencia de otros negocios similares. No hay base alguna para inferir que un edificio que tenía como fin 'más comodidades', fuese a producir por arte de magia un aumento de venta sustancial para un comercio en el barrio Mameyes de Río Grande. La concesión de indemnización por beneficios dejados de percibir no puede basarse en evidencia especulativa ni en cálculos arbitrarios.

'El mero hecho de que la demandante pueda haber sufrido pérdidas no da derecho a indemnización, pues para obtenerla, precisa suministrar a la corte los datos necesarios poder estimar su importe.' *Sánchez* v. *Cooperativa Azucarera*, 66 D.P.R. 346, 353.

'Como sostuvo la corte sentenciadora, daños y perjuicios que se alega que se sufrieron por los posibles beneficios que se hubieran derivado de ciertos garages que se pensaba construir en esos doscientos metros, no son reclamables por remotos y especulativos.' *Suárez* v. *Suárez*, 47 D.P.R. 97, 104.

'As a general rule the expected profits of a commercial business are too uncertain, speculative, and remote, to permit a recovery for their loss.' 25 *Corpus Juris Secundum*, sec. 42(b), pág. 518." (Págs. 10–11 alegato recurrente.)

El error fue cometido y se eliminará dicha partida de la sentencia.

■ Por el sexto señalamiento se ataca la partida de $500 concedida al otro demandante Otto González Ydrach por supuestos daños morales y mentales.

Respecto a estos daños, concluyó el tribunal sentenciador:

"No podemos concluir que el demandante Otto González Ydrach haya sufrido daños en su reputación como ingeniero civil. La prueba demuestra una caprichosa inferencia de responsabilidad por personas particulares al demandante Otto González Ydrach por la demolición de la obra que había diseñado y supervisaba. Solamente ha estado expuesto a la incomodidad o sufrimiento moral que se ocasiona al saber que la obra diseñada por él tuvo que ser demolida por culpa de la demandada." (Pág. 11 alegato recurrente.)

Nuevamente convenimos con la recurrente en que no procede la concesión de indemnización por los supuestos daños alegados por el ingeniero González Ydrach y al efecto copiamos de su alegato:

"En otras palabras, el Tribunal le concedió la suma de quinientos dólares ($500.00) a este demandante porque supuestamente sufrió al ver que se destruía la torta del edificio de Soegard. González Ydrach no era ni siquiera el dueño de la obra y sus 'sufrimientos' como arquitecto o inspector no son compensables en forma alguna. Está resuelto uniformemente por este Hon. Tribunal que generalmente no son recobrables los daños mentales o morales basados en un incumplimiento de contrato o en destrucción o pérdida de propiedad. *Camacho* v. *Iglesia Católica,* 72 D.P.R. 353, 363; *Díaz* v. *Palmer,* 62 D.P.R. 111; *Díaz* v. *Cancel,* 61 D.P.R. 888. Véase también el caso de *Rosado* v. *Smallwood Bros.,* 62 D.P.R. 637, 640 en que se sostuvo la improcedencia de sufrimientos y angustias mentales por el demandante haber dejado de ir a trabajar. De hecho la única evidencia de daños morales que aparece en el récord es: (a) la preocupación por lo que diría la gente, etc.—o sea, daños a la reputación—los cuales el Tribunal no encontró probados y (b) que dejaba de ir a ver a la novia por lo preocupado que estaba (I TE 31–32). Es obvio que este tipo de daño no es ni previsible ni compensable. *Camacho* v. *Iglesia Católica,* supra pág. 363; *Díaz* v. *Cáncel,* supra, pág. 898." (Págs. 11 y 12 alegato recurrente.)

Dicha partida será eliminada también de la sentencia.

■ El séptimo error no fue cometido. La concesión de honorarios de abogado procede en este caso. Sin embargo, de la partida de $1000.00, se eliminarán, por razones obvias, los $200.00 concedidos al demandante González Ydrach.

Una vez resueltos los anteriores señalamientos de errores, cae de su base el octavo y último señalamiento predicado en la procedencia de la Reconvención.

*Se modificará la sentencia dictada por el Tribunal Superior, de conformidad con los términos de esta opinión, y así modificada se confirmará.*