FRANCISCO DUCHESNE LANDRÓN Y OTRA, demandantes y recurridos, *v.* HIRAM ANTONIO RUIZ ARROYO Y OTRA, demandados y recurrentes.

*Número:* R-73-3      *Resuelto:* 18 de octubre de 1974

*Gonzalo Diago Betancourt,* abogado de los recurrentes; *R. Elfrén Bernier y Plinio Pérez Marrero,* abogados de los recurridos.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

Desde el 13 de septiembre de 1969 el recurrente Ruiz Arroyo, un diplomado doctor en medicina, y su esposa se hallan instalados en una casa perteneciente al recurrido, radicada en la Urb. College Park de Río Piedras. Ganaron acceso a dicha residencia en virtud de un contrato de promesa de venta en el que se obligaron a pagar un precio de $39,500 desglosado en las siguientes partidas: $2,000 al firmar el compromiso, $11,500 dentro de los 60 días siguientes; $16,000 que retendría el comprador al asumir la primera hipoteca que afectaba la casa a favor de James T. Barnes & Co. y un balance de $10,000 a ser garantizado con segunda hipoteca a favor del vendedor sobre el mismo inmueble. El recurrente que así se obligó sólo ha pagado los $2,000 de anticipo que le franquearon la entrada a la casa, un plazo de $132 y la mitad

de otro de la hipoteca con James T. Barnes para un total de $198.00. Ha disfrutado de una residencia en College Park por más de 5 años con una erogación de $2,198.00, equivalente a una renta mensual de $36.63.

Llegado el día de formalizar la escritura de compraventa, el recurrente pidió prórroga porque no tenía el dinero, y señalada nueva fecha para el pago de los $11,500.00 y otorgamiento de título, le presentó a sus vendedores un documento en que éstos confesaban recibo total del precio y nada se decía de los $10,000 aplazados y que debían ser asegurados con segunda hipoteca. Allí terminó toda semblanza de conducta responsable en el comprador recurrente.

El vendedor Duchesne, quien se fue a vivir a una casa alquilada, hubo de seguir pagando el plazo mensual de la acreedora hipotecaria Barnes, y más tarde el exigido por el banco que refinanció la hipoteca, para proteger su propiedad de la ejecución. El recurrido no se cruzó de brazos frente al desastre de su economía familiar provocado por la violación de acuerdos en que incurrió su comprador. Presentó una primera demanda de desahucio contra éste que no prosperó por un impedimento de la Ley de Alquileres Razonables; y un segundo caso que también le fue desestimado por suscitar el demandado como defensa la de conflictos de título.

Concluye el juez sentenciador, con muy buen juicio, que la conducta del recurrente demuestra un desprecio total de lo convenido y que el impacto de su contumacia y obduración, aparte de dislocar la economía del matrimonio recurrido tuvo repercusiones emocionales en estas personas que sufrieron la natural aflicción generada por la estrechez económica. Para sobrevivir la crisis el recurrido hubo de refinanciar la hipoteca sobre la casa el 19 de octubre de 1971 con el United Federal Savings & Loan Ass'n, lo que resultó en el aumento de los plazos hipotecarios mensuales a $310.00.

Con dichos antecedentes el tribunal de instancia declaró resuelto el contrato, dispuso la inmediata restitución de la

casa por el recurrente a su legítimo dueño el recurrido y condenó al primero a pagar a éste compensación por uso computada a razón de $329.33 mensuales, partiendo del 13 de septiembre de 1969 e intereses desde esa fecha, $1,000 de comisión pagada por el vendedor a un corredor por el negocio que nunca se materializó; indemnización por daños y sufrimientos morales de $3,000 para el vendedor y $1,000 para su esposa; y $2,000 en concepto de honorarios de abogado, debiéndosele abonar los $2,198.00 importe del anticipo de precio y plazo y medio de la hipoteca de Barnes que pagó el recurrente. Señala como errores el médico recurrente: (1) errónea apreciación de la evidencia; (2) insuficiencia de la prueba; (3) arbitrariedad del método seguido para fijar la compensación por uso de la vivienda; (4) negativa del tribunal a admitir parte de la evidencia sobre daños del demandado recurrente; (5) exceso en la concesión de daños y honorarios al demandante; (6) imposición de intereses sobre la cuantía de compensación por uso partiendo de la fecha de ocupación de la casa por el recurrente y (7) indemnización por daños morales derivados del incumplimiento de contrato.

(1) (2) Las determinaciones factuales a que llegó el juez de instancia respecto al incumplimiento de contrato por el demandado recurrente y su impacto en la economía familiar del recurrido están ampliamente sostenidas por la prueba. De ello nos ha convencido la lectura de la transcripción de la evidencia que en este pleito consta de 3 tomos.

■ (7) Sin embargo, no nos satisface la prueba en cuanto a ameritar la concesión de daños morales por angustias y sufrimientos, pues no se cumple la regla de *Pereira* v. *I.B.E.C.*, 95 D.P.R. 28, 83 (1967), en lo que respecta a haberse afectado en forma apreciable el estado emocional de los reclamantes. La concesión de daños morales (indemnización de sufrimientos y angustias) imputados a un incumplimiento de contrato está cualificada y restringida a extremos que no

revela la evidencia admitida. *Soegard* v. *Concretera Nacional, Inc.*, 88 D.P.R. 179, 186 (1963).

■ (4) Durante el juicio el tribunal a quo excluyó parte de la evidencia de daños ofrecida por la parte recurrente y que se refiere a pérdida de ingresos. Esta era sin lugar a dudas una partida especial que no se alegó en la reconvención y no surge abuso de discreción del tribunal al denegar una enmienda de última hora para incorporarla a las alegaciones. La esposa del médico recurrente declaró sobre sus sufrimientos y angustias por la situación de incertidumbre que no le permitía arreglar la casa a su gusto, pero esta prueba no le mereció crédito al juez sentenciador y tampoco alcanza el grado de perturbación emocional que exige *Pereira,* supra, amén de que la conducta de su esposo ha sido el agente provocador de todo el malestar e inconvenientes que ha envuelto a estas personas.

(5) La partida de pérdida de $1,000, importe de la comisión pagada por el recurrido a un corredor por su gestión en el negocio abortado fue probada y el recurrente ninguna razón aduce para fundar su objeción a la misma.

(3) (6) A los fines de estimar la compensación por uso que finalmente fijó en $329.33 por mes, lo que consideró equivalente a la utilidad del inmueble en términos de renta, el juez de instancia recurrió a la Ley de Alquileres Razonables (17 L.P.R.A. sec. 186(a)–(f)) cuyo método exige elementos de prueba como historial arrendaticio de la unidad de vivienda, costo de construcción, costo del solar, equipos y servicios, etc., que no fueron objeto de prueba en este caso.

■ El concepto de compensación por uso tiene una configuración de reciprocidad integrada por el aprovechamiento de una parte y la correlativa pérdida que sufre la otra. Es meridianamente claro que el recurrente no podrá enriquecerse a costa de su vendedor por el valor que representa el uso de la casa por el período comprendido desde el 13 de septiembre de 1969 hasta que cese su posesión precaria. El valor arrendaticio de una propiedad es una guía para computar la compensa-

ción por uso pero no la única. *Riera* v. *Pizá*, 85 D.P.R. 268 (1962).

■ Aun cuando el recurrido no presentó prueba sobre cánones de alquiler prevalecientes para viviendas similares, la evidencia admitida aporta un elemento que puede servir de base para valorar, aun en parte el enriquecimiento que para el recurrente ha representado el uso gratuito de la casa por todo el largo período de tiempo, cual es el plazo mensual hipotecario de $132 con James T. Barnes & Co., que luego aumentó a $310 mensuales con United Federal Savings & Loan Ass'n. De haber tenido el recurrido libre uso de su propiedad, como era su derecho, hubiese disfrutado de un hogar propio a cambio de mantener al día dicha obligación hipotecaria. Excluido como ha estado de la posesión de este inmueble, es el transgresor recurrente quien se ha beneficiado y enriquecido a costa de la puntualidad del deudor hipotecante. Reconocemos que el valor arrendaticio posiblemente excede la referida cantidad de $310 (o la de $329.33 que determinó el Tribunal Superior), pero el recurrido no ha suplido la prueba que nos permita compensar en toda su extensión, sin ayuda de la imaginación la totalidad de su pérdida, por lo que hemos de ceñirnos al único factor tangible ofrecido en el juicio. El alquiler que por vivir otra casa haya pagado el recurrido que entregó la suya propia, está desvinculado del valor económico que para el recurrente ha representado habitar la del primero y de la productividad generadora de capital de este inmueble en sí y debe por tanto descontarse como elemento adicional de compensación por uso.

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, el 21 de noviembre de 1972, y se eliminan las partidas de $3,000 y $1,000 concedidas al recurrido y a su esposa, respectivamente, por daños morales; se condena a los demandados recurrentes a pagar al recurrido Duchesne una compensación por uso de la vivienda computada a razón de $132 mensuales desde el 13 de septiembre de 1969 al 18 de octubre de 1971; y a razón de $310 mensuales desde el 19 de*

*octubre de 1971 hasta el día en que restituya a su legítimo dueño demandante la posesión de la casa, incluyendo intereses legales únicamente a partir de la fecha de la sentencia en primera instancia, y así modificada se confirmará la sentencia revisada en todos sus demás particulares.*