RUTH V. DIAZ FONTANEZ Y OTRO
Apelados

v.

UNIVERSIDAD INTERAMERICANA DE P.R.
Apelante

Núm. KLAN-98-00865

San Juan, Puerto Rico, a 5 de mayo de 1999

Panel integrado por su Presidenta, la Jueza Ramos Buonomo,
el Juez Córdova Arone y el Juez González Román

González Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La apelante, Universidad Interamericana de Puerto Rico (Inter) solicita que revoquemos la sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 27 de mayo de 1998 y notificada el 3 de junio de 1998. El 18 de junio de 1998 dicho tribunal notificó su resolución declarando sin lugar una moción de reconsideración y al siguiente día 19 hizo lo mismo en cuanto a una solicitud de determinaciones adicionales de hecho y derecho, ambas presentadas por la Inter. El tribunal apelado resolvió que la Inter incurrió en un incumplimiento de contrato al tardarse nueve (9) meses en emitirle a la apelada, la Sra. Ruth V. Díaz Fontánez (Sra. Díaz), una certificación de grado correcta y al notificarle dos certificaciones por un grado menor al realmente obtenido. Además, el tribunal apelado condenó a la Inter a pagarle la suma de seis mil dólares ($6,000) a la Sra. Díaz por concepto de los sufrimientos y angustias mentales relacionados al incumplimiento de la obligación contractual.

La Sra. Díaz cursó estudios en el Colegio Regional de Fajardo de la Inter (actual Recinto Universitario de Fajardo) desde agosto de 1978 hasta diciembre de 1983 y completó los requisitos para un bachillerato en ciencias secretariales en diciembre de 1983. La Inter le otorgó el diploma acreditando el grado académico el 1ro. de junio de 1985.

En octubre de 1995 la Sra. Díaz solicitó una transcripción de créditos al Recinto de Fajardo de la Inter. Dicha transcripción fue provista con los créditos aprobados, ciento veintiocho (128), pero no constaba el grado de bachillerato conferido. En febrero de 1996 solicitó una segunda transcripción y obtuvo el mismo resultado.

En marzo de 1996, la Sra. Díaz solicitó una tercera transcripción, pero esta vez al Recinto Metropolitano de la Inter, lugar donde cursó sus últimos cursos. De una carta de 1ro. de agosto de 1996 suscrita por el Lcdo. Fernando Moscoso, abogado de la Inter, surge que dicha institución eventualmente le envió dos (2) transcripciones corregidas y completas con la certificación del título obtenido de bachillerato.

El 27 de junio de 1996 la Sra. Díaz demandó a la Inter por incumplimiento de contrato y daños y perjuicios. Esta alegó, *inter alia*, que la Inter le había causado daños al expedir dos transcripciones por un grado inferior al

obtenido. Según la Sra. Díaz, los actos de la Inter: a) le negaron la posibilidad de aspirar a un ascenso en su trabajo, de cursar estudios postgraduados y aspirar a varios puestos federales; b) le causaron angustias y sufrimientos; c) que las constantes e innecesarias llamadas telefónicas de parte de los agentes de la Inter a su lugar de trabajo, so pretexto de investigar sus reclamos, dificultaron el desempeño de sus labores diarias y le causaron ansiedad, máxime cuando la Inter es la que custodia toda la documentación académica pertinente. La Sra. Díaz solicitó una indemnización ascendente a doscientos cincuenta mil dólares ($250,000.00) por los daños que alegadamente sufrió. La Inter negó responsabilidad.

El 2 de diciembre de 1997 el tribunal apelado emitió una resolución que redujo la controversia entre las partes a cuatro (4) puntos: a) la cantidad de créditos aprobados: 128 según la Inter ó 142 según la Sra. Díaz; b) si faltaban documentos esenciales en el expediente estudiantil de la Sra. Díaz; c) si la tardanza en la emisión de la transcripción correcta fue responsabilidad de la Inter o de la Sra. Díaz; d) la determinación de los daños.

El 19 de mayo de 1997 el tribunal apelado celebró vista en su fondo en la cual consideró las controversias planteadas y resolvió que la cantidad de 128 créditos era correcta y suficiente para la obtención del título de bachiller y que el expediente académico contenía todos los documentos indispensables. En cuanto a la tercera controversia, el tribunal apelado resolvió que la Inter era responsable por la tardanza en la emisión de una transcripción correcta y completa. Según dicho tribunal, la Inter no presentó evidencia alguna para sustentar su alegación de que la tardanza se debió a supuesta información errónea sometida por la Sra. Díaz en su solicitud de transcripción mientras que según los testimonios de la Sra. Díaz más el del la Sra. Carmen Juan de Carmona (Sra. Carmona), registradora del Recinto de San Germán de la Inter, en condiciones normales el tiempo requerido entre una solicitud de una transcripción y su expedición no tarda más de dos (2) semanas. En el caso de autos, el tribunal apelado concluyó que transcurrieron nueve (9) meses entre de la solicitud original de transcripción y su eventual emisión correcta, lo cual no sólo consideró irrazonable sino que, según dicho tribunal, constituyó un quebrantamiento de una obligación contractual entre la Inter y la Sra. Díaz. Según el tribunal apelado, la relación entre la Inter y la Sra. Díaz, le impuso a la Inter un deber *ex contractu* de custodiar y certificar los créditos y grados conferidos a la Sra. Díaz. ∎

En cuanto a la determinación de daños, al tribunal apelado no le mereció crédito la alegación de la Sra. Díaz de que fue sujeta a hostigamiento por parte de agentes de la Inter, ya que en el expediente no obraba prueba alguna a esos efectos. Concluyó lo mismo en torno a la alegación de la Sra. Díaz de que al no recibir una transcripción correcta a tiempo le negó la posibilidad de aspirar a varias posiciones en el gobierno federal. La Sra. Díaz también alegó que su patrono solicitaba transcripciones actualizadas para poder considerar a sus empleados para ascensos. Sin embargo, dados los hechos de que: a) la Sra. Díaz comenzó a trabajar con su presente patrono como recepcionista en 1982; b) obtuvo su bachillerato en 1985; c) fue ascendida a su presente posición de secretaria en 1986; d) y no solicitó una transcripción hasta 1995, el tribunal apelado tampoco le mereció crédito la alegación de la pérdida de posibles ascensos profesionales, ya que la ascendieron en el 1986 y ella no ha estudiado más desde entonces.

El tribunal apelado, sin embargo, sí entendió probados los sufrimientos y angustias mentales que surgieron como consecuencia del quebrantamiento de la obligación de la Inter de proveer una transcripción correcta. En particular, el tribunal apelado entendió que la Inter tendría que pagarle a la Sra. Díaz la suma de seis mil dólares ($6,000.00) como indemnización *"por el estado de temor y frustración"* que ésta le provocó. ∎

En apelación, la Inter esencialmente alega que aunque existía un contrato entre la Inter y la Sra. Díaz el tribunal erró al interpretarlo, pues una universidad no incumple un contrato de estudios a menos que actúe de mala fe al apartarse de sus normas y que el tribunal apelado erró al concederle a la Sra. Díaz daños y perjuicios *ex contractu*. Veamos.

El artículo 1054 del Código Civil, 31 L.P.R.A. sec. 3018, de dicho código establece que:

*"Quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravieran al tenor de aquellas."*

De manera complementaria el artículo 1056, 31 L.P.R.A. sec. 3020, explica que:

*"La responsabilidad que proceda de negligencia es igualmente exigible en el cumplimiento, pero podrá moderarse por los tribunales según los casos."*

A su vez, el artículo 1057, 31 L.P.R.A. sec. 3021 aclara que:

*"La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar. Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que correspondería a un buen padre de familia."*

La Inter acepta que entre ella y la Sra. Díaz existe una relación contractual. Sin embargo, citando una serie de casos federales de diversos circuitos, alega que para que la Inter sea responsable por el quebrantamiento de esa relación contractual ésta tiene que haber actuado de mala fe al apartarse de sus normas. No le asiste la razón. En nuestra jurisdicción, las obligaciones y los contratos, se rigen por el Código Civil, no fuentes jurisprudenciales norteamericanas. Artículo 1042, *et seq.*, del Código Civil, 31 L.P.R.A. 2992, *et seq.* Particularmente, los daños y perjuicios ex contractu se rigen por los artículos citados.

Por ello, la conclusión del tribunal apelado de que la Inter estaba obligada contractualmente a custodiar y certificar correctamente y a tiempo los créditos y grados conferidos a la Sra. Díaz, fue una conforme a derecho. Tras apreciar la prueba desfilada, y en el ejercicio de su discreción, el tribunal apelado consideró el testimonio de la Sra. Carmona, registradora de la Inter en San Germán, como suficiente para establecer que dos semanas era un término razonable para notificar una transcripción correcta. Dicha conclusión nos parece satisfactoria pues el término de dos semanas, grado de diligencia que ha de prestarse por no existir un término expreso en el contrato, está basado, según la prueba, en los propios usos y costumbres de la Inter. Así, la Inter no actuó como un buen paterfamilias al demorarse nueve meses en proveerle a la Sra. Díaz una transcripción correcta.

Sin embargo, lo anterior no significa que el hecho del incumplimiento contractual, o el cumplimiento defectuoso por demora, implique una inferencia automática que tal incumplimiento causó los daños y perjuicios morales alegados. Es necesario probar tales daños y constituye una cuestión de prueba. En estos casos, nuestro ordenamiento exige que la parte que alega daños morales por quebrantamiento de una obligación contractual pruebe que el incumplimiento afectó en forma apreciable su estado emocional. Véanse: *Lameiro v. Dávila,* 103 D.P.R. 834, 842 (1975); *Duchesne Landrón v. Ruiz Arroyo,* 102 D.P.R. 699, 702 (1974); *Pereira v. I.B.E.C.,* 95 D.P.R. 28, 83 (1967). Según el expediente del caso de autos, la Sra. Díaz no presentó prueba sobre cómo el incumplimiento de contrato afectó su estado emocional de forma apreciable. La Sra. Díaz se limitó a sus alegaciones, las cuales el tribunal apelado descartó casi en su totalidad y unas breves expresiones en su testimonio sobre insomnio y frustración, las cuales estuvieron totalmente desprovistas de corroboración o acreditación. La concesión de daños morales (indemnización de sufrimientos y angustias) imputados a un incumplimiento de contrato está cualificada y restringida a extremos que no revela la evidencia admitida. Véase: *Soegard v. Concretera Nacional, Inc.,* 88 D.P.R. 179, 186 (1963).

Por todo lo cual se revoca la concesión de $6,000.00 por concepto de daños morales a la Sra. Díaz por

ausencia de prueba y así modificada se confirma la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 99 DTA 141**

**1.** Mediante una orden de carácter interlocutorio de 17 de junio de 1998, el tribunal apelado ya había concluido que: *"[l]a relación contractual entre un estudiante y la universidad donde cursó estudios no termina con la graduación. Es una obligación contractual de la universidad el custodiar el expediente académico del estudiante y el emitir transcripciones de créditos cuando éste lo solicite".*

**2.** Según la transcripción de la vista la Sra. Díaz testificó que *"Bueno, yo creo que este asunto yo (sic) he sido más que condescendiente, más que paciente con la Universidad Interamericana. Esto me ha afectado mi vida emocional [ ... ] Por las noches yo no podía ... me despertaba pensando solamente en este problema que tal vez habían botado mi expediente académico y yo no tenía nada concreto de mis estudios, después de tanto sacrificio que yo había estudiado. [Pregunta- ¿Se siente o se ha sentido usted frustrada con esta situación?] Más que frustrada."* En la pág. 24 de la Transcripción de la Prueba.