MARÍA LAMEIRO, demandante y recurrida, v. PEDRO A. DÁVILA y su ESPOSA HERMINIA CRUZ, demandados y terceros demandantes y recurridos; WILLIAM FLORES y CAGUAS FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, terceros demandados y recurrente la segunda.

Número: R-72-68        Resuelto: 13 de mayo de 1975

*Dennys Martínez Irizarry* y *Rafael Rodríguez Ema,* abogados del Caguas Federal Savings and Loan Association of Puerto Rico; *Efraín Ortiz Bras,* abogado de los demandados, terceros demandantes y recurridos; *L. Morales Contreras* y *Rosario Morales Señeriz,* abogados de la demandante y recurrida.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

En 26 de enero de 1962 William Flores tomó prestado a María Lameiro la suma de $10,000.00 con intereses a razón de nueve por ciento anual, pagaderos mensualmente. Como evidencia de su deuda Flores otorgó cinco pagarés hipotecarios al portador y éstos fueron garantizados mediante cinco hipotecas distintas que gravaron, respectivamente, cinco solares pertenecientes a Flores.

En el pagaré objeto de este pleito se describe el solar gravado como finca urbana Núm. 11 de la Urbanización Villa Flores radicada en Caguas, Puerto Rico, inscrita al Folio 160 del Tomo 403 de Caguas, Finca Núm. 10,610, inscripción primera.

Otro de los pagarés gravaba el solar Núm. 10 de la misma urbanización, Finca Núm. 10,298.

Posteriormente las partes acordaron reducir el interés al ocho por ciento anual. A la fecha en que Flores otorgó los mencionados pagarés también otorgó escritura de cancelación de una hipoteca de $3,000.00 que gravaba el solar Núm. 10. Todas estas escrituras fueron inscritas en el Registro de la Propiedad.

En julio de 1962 Flores entró en conversaciones con el Caguas Federal Savings and Loan Association, de aquí en adelante denominado el Banco, para que dicha institución le prestara $8,400.00 en primera hipoteca sobre el solar Núm. 11 y a la vez liquidar la hipoteca de $2,000.00 envuelta en este caso y otra de $3,000.00 que también gravaba dicho solar a favor de Olimpo Otero.

Flores y el Banco acordaron otorgar la escritura correspondiente el 11 de agosto de 1962, en la oficina del notario Don Rafael Rodríguez Ema. Todas las partes concurrieron al acto ese día, pero María Lameiro no llevó el pagaré consigo, por cuyo motivo el Banco no le pagó a ella en esa ocasión. Lameiro y los oficiales del Banco acordaron que ella llevase el pagaré el lunes próximo y ella entonces recibiría el cheque correspondiente.

A pesar de que el Banco en todo momento hizo referencia al solar Núm. 11, María Lameiro, por error o por falta de experiencia en estos asuntos, creyó que podía entregar cualquiera de los cinco pagarés que ella poseía y en los cuales aparecía Flores como deudor y entregó al Banco el pagaré garantizado con hipoteca sobre el solar Núm. 10. Recuérdese que lo que se había acordado era cancelar la hipoteca sobre el solar Núm. 11.

Lameiro llevó el pagaré y éste fue recibido por Juanita Flores de Franco, del Departamento de Préstamos del Banco, quien en el acto se aseguró de que el pagaré estaba efectivamente suscrito por William Flores. No corroboró otros datos porque ella no tenía a mano los documentos que le permitiesen hacerlo. La práctica era corroborar los datos al momento de

firmarse las escrituras ante el notario, lo que no se hizo en este caso porque María Lameiro no llevó consigo el pagaré en esa ocasión. El pagaré fue posteriormente cancelado por el Lcdo. Juan E. Soto, oficial ejecutivo del Banco, y remitido al notario Rodríguez Ema para que éste otorgase la escritura de cancelación. El notario no se dio cuenta de que se le había entregado el pagaré que no era.

En 15 de agosto de 1962 dicho notario, con vista al pagaré erróneo, otorgó escritura de cancelación de hipoteca de $2,000.00 que afectaba el solar Núm. 10. También otorgó escritura de cancelación de una hipoteca de $3,000.00 que gravaba el solar Núm. 11, pero erróneamente expuso en dicha escritura los datos relacionados con el solar Núm. 10.

En 28 de noviembre de 1962 el Registrador de la Propiedad anotó la cancelación de la hipoteca de $2,000.00 que afectaba el solar Núm. 10, pero no anotó la segunda escritura de cancelación de la hipoteca de $3,000.00 que gravaba el solar Núm. 10, pues esa hipoteca ya había sido cancelada en 26 de enero de 1962, como antes indicamos. No es posible que el notario haya tenido ante sí un pagaré de $3,000.00 gravando el solar Núm. 10, cuando dicho pagaré había sido tachado y cancelado por otro notario en 26 de enero de 1962. Lo que tuvo ante sí el notario Rodríguez Ema relacionado con el solar Núm. 10 fue el pagaré de $2,000. La segunda escritura de cancelación de la hipoteca de $3,000.00 sobre el solar Núm. 10 fue retirada sin inscribir.

A consecuencia de todo esto, la situación registral a esa fecha era la siguiente: El solar Núm. 10 aparecía libre de la hipoteca de $3,000.00 y libre, por error, de la hipoteca de $2,000.00, porque lo que se había pretendido hacer era liberar al solar Núm. 11 de dicha hipoteca de $2,000. A su vez, el solar Núm. 11 aparecía gravado con una hipoteca de $8,400.00, subordinada a otras hipotecas de $3,000.00 y $2,000.00 cada una que gravaban dicho solar Núm. 11. Subsiguientemente, en 4 de enero de 1963, Flores vendió el solar

Núm. 10 a un tercero, cuyo nombre no surge de los autos. No hay evidencia en autos respecto a si Flores tenía o no conocimiento de que el solar había sido erróneamente liberado de la hipoteca de $2,000. Tampoco surge si el negocio entre Flores y el tercero estaba sujeto o no a que dicho tercero asumiera la deuda garantizada por la hipoteca.

Posteriormente Pedro A. Dávila entró en negociaciones con Flores para comprarle el solar Núm. 11 y una casa edificada en el mismo. Flores le aseguró a Dávila que el solar número 11 estaba sujeto solamente al gravamen de $8,400.00, a favor del Caguas Federal Savings; sin embargo, Dávila encontró que en el Registro de la Propiedad subsistían las hipotecas de $2,000.00 y $3,000.00 que gravaban dicho solar. Flores sugirió a Dávila que visitara el Banco para que comprobara que esas dos hipotecas habían sido canceladas. Dávila fue al Banco y, según su testimonio, un oficial del Banco le dijo que lo expresado por Flores era correcto y le mostró dos escrituras de cancelación indicándole que sólo faltaba presentarlas al Registro. En 11 de marzo de 1964 Dávila compró el solar 11, confiando en la manifestación del oficial del Banco en el sentido de que las hipotecas estaban canceladas. No lo comprobó en el Registro.

Posteriormente Dávila hizo gestiones con el Banco para que éste registrara las cancelaciones y los oficiales del Banco le informaron que había que hacer una nota aclaratoria, pero que no habían podido localizar a Flores para ello y le dijeron que no se preocupara, que el Banco iba a resolver el problema. En dos ocasiones Dávila escribió al Banco proponiéndole que él retendría $5,000.00 para pagar las hipotecas de $3,000.00 y $2,000.00 y no recibió contestación a sus cartas.

En 12 de junio de 1965, se otorgó escritura aclaratoria en relación con la hipoteca de $3,000, la cual fue inscrita en el Registro de la Propiedad. La cancelación de esa hipoteca, desde luego, no creaba problema alguno, ya que había per-

fecta coincidencia entre el pagaré que se pretendía cancelar y la propiedad gravada.

La rectificación de la cancelación de la hipoteca de $2,000, en cambio, hubiese requerido el acuerdo de todas las partes, incluyendo el tercero que compró el solar Núm. 10, y en su defecto, que las partes que se opusieran fuesen vencidas en juicio. Pero la rectificación del error no podía perjudicar al tercero que compró el solar Núm. 10 si dicho tercero convino en comprar la propiedad libre del gravamen de $2,000. Arts. 99 y 256 de la Ley Hipotecaria; 30 L.P.R.A. secs. 173 y 433 respectivamente; *Berlingeri* v. *Registrador*, 96 D.P.R. 706 (1968).

No surge qué pasos, si algunos, se tomaron para rectificar el error cometido en relación con la cancelación de esa hipoteca. En 6 de abril de 1970, transcurridos más de seis años desde que se suspendió el pago de intereses sobre dicha hipoteca, María Lameiro inició juicio sobre ejecución de hipoteca por la vía ordinaria contra Dávila y su esposa, quienes habían comprado el solar Núm. 11. Estos contestaron la demanda y reconvencionaron solicitando indemnización por daños.

Dávila y su esposa también presentaron demandas contra terceros, contra Flores y contra el Banco alegando que éstos les serían responsables a ellos si ellos resultasen responsables a la demandante, a causa de falsas representaciones y negligencia en no corregir el error. Solicitaron además indemnización por los daños que esa actuación les causó.

El Banco contestó la demanda contra tercero e interpuso defensas afirmativas. También presentó reconvención contra la demandante María Lameiro, solicitando la cancelación de la hipoteca, e instó demanda contra coparte contra Flores alegando que si se le imponía responsabilidad al Banco, él le sería responsable a esa institución debido a la doctrina de enriquecimiento injusto.

Flores no contestó la demanda contra tercero, ni la demanda contra coparte y se anotó la rebeldía. Obra en autos

un telegrama que él envió al Tribunal expresando que no podía comparecer al juicio por estar enfermo.

El tribunal de instancia concluyó que en el error participaron el Banco y María Lameiro en un 90% y 10% respectivamente; que el Banco era responsable en dicha proporción por daños sufridos por María Lameiro y por los esposos Dávila y que tenía derecho a repetir contra Flores, por razón de enriquecimiento injusto, por la suma que tuviese que pagar a María Lameiro; que María Lameiro no podía ejecutar la hipoteca y debía cancelarla y que respondía en un diez por ciento de los daños sufridos por los Dávila. También impuso honorarios de abogado al Banco, a favor de los Dávila por la suma de $200. El tribunal fijó los daños de los esposos Dávila en la suma de $1,000 e impuso intereses por temeridad sobre dicha suma, a partir de la fecha en que ellos compraron la propiedad. Los daños sufridos por María Lameiro los fijó el tribunal en una suma equivalente al principal más intereses vencidos en la hipoteca. Contra Flores el tribunal dictó sentencia en rebeldía.

El Banco presentó recurso de revisión ante este Tribunal y María Lameiro y los esposos Dávila se opusieron a su expedición. El recurso se desestimó, pero subsiguientemente fue expedido en reconsideración.

Ante nos la posición del Banco es la siguiente: (1) que dicha institución no es responsable en daños a María Lameiro, ni a los esposos Dávila; (2) que Flores es el único responsable a María Lameiro por la deuda de $2,000 y los intereses acumulados en dicha obligación, más $300 por costas y honorarios de abogado pactados en la misma; (3) que María Lameiro debe responder por costas y honorarios de abogado al Banco; (4) que Pedro Dávila no es parte interesada en el pleito debido a que a la fecha del juicio la propiedad pertenecía exclusivamente a Herminia Cruz, su ex-esposa, por razón de liquidación de gananciales subsiguiente a su divorcio de

Dávila; (5) que la imposición de intereses por temeridad procede sólo a partir de la presentación de la demanda.

■ Una reclamación por daños conlleva intereses debido a temeridad, sólo a partir de la fecha en que se presenta la demanda. Regla 44.4 (e) de Procedimiento Civil.

No se justifica condenar al Banco en daños. María Lameiro no llevó el pagaré al Banco cuando se realizó la transacción ante el notario. Llevó después un pagaré que no era ante un oficial del banco quien no tenía documentos para determinar si el pagaré era el correcto o no. Cuando el pagaré fue llevado al notario para su cancelación, éste otorgó la escritura sin constatar la corrección del pagaré y no advirtió que tenía ante sí un pagaré erróneo. Cuando Dávila compró la propiedad tampoco examinó los documentos que el Banco le mostró para cerciorarse si en efecto cancelaban las hipotecas que afectaban la propiedad que compró.

Se observará que ni María Lameiro, ni el Banco, ni el notario, ni Dávila comprobaron la corrección de los documentos y todos descansaron en las actuaciones de los demás. Habiendo las partes actuado en la misma forma, no parece razonable que una de ellas pueda exigir responsabilidad a una de las otras.

Es cierto que posteriormente, cuando el Banco descubrió el error, convino con Dávila en corregirlo. El Banco corrigió el error relacionado con la hipoteca de $3,000, porque dicho error no requería la aprobación de ninguna de las partes envueltas. Pero el error relacionado con la hipoteca de $2,000.00 requería no sólo la aprobación de las partes, sino también la de un tercero que compró el solar Núm. 10. El Banco, según la declaración del propio Dávila, no pudo conseguir a Flores para realizar la corrección.

■ Además, Dávila no probó daños que ameriten compensación. Como consecuencia del presente pleito se ordenó la cancelación de la hipoteca que afectaba el solar Núm. 11, el que compró Dávila. No hubo daños pecuniarios y se hizo

lo que el Banco se había comprometido hacer. Los únicos daños que los esposos Dávila pudieron haber sufrido, si algunos, fueron daños morales. Tratándose de una obligación que el Banco había asumido para con los esposos Dávila, es aquí aplicable lo que expresamos en *Duchesne Landrón* v. *Ruiz Arroyo,* 102 D.P.R. 699 (1974) y en casos allí citados, al efecto de que para que sean compensables daños morales por incumplimiento de contrato, éstos deben ser apreciables, cosa que aquí no se probó.

En vista de lo anterior, erró la ilustrada Sala sentenciadora al imponer responsabilidad a la recurrente a favor de los esposos Dávila y de María Lameiro.

Los esposos Dávila compraron la propiedad a sabiendas de que la misma estaba gravada en el Registro con hipotecas por las sumas de $2,000, $3,000 y $8,400. La recurrente canceló la hipoteca de $3,000, pero no pudo cancelar la hipoteca de $2,000 objeto del presente caso porque no pudo localizar a Flores para ello. Pero esa hipoteca fue correctamente cancelada por el tribunal de instancia en el presente caso. Por consiguiente, los esposos Dávila no han sufrido pérdida pecuniaria alguna causada por la recurrente y, como indicamos antes, no proceden daños morales.

La recurrente, tampoco es responsable ante María Lameiro. Esta nada reclamó a la recurrente en el pleito. Su acción fue una de ejecución de hipoteca contra los dueños de la propiedad. Lameiro perdió su garantía hipotecaria como consecuencia de su propio error o negligencia al entregar un pagaré erróneo para su cancelación. La recurrente tampoco es deudora del pagaré; el deudor es William Flores.

■ Fue Flores quien obtuvo el préstamo de María Lameiro, quien se obligó a pagar esa deuda y quien dejó de pagarla. Y aunque María Lameiro perdió su garantía hipotecaria, no perdió por ello su derecho a que Flores le pague el préstamo mediante acción ordinaria en cobro de dinero. Como se dijo en *Fernández* v. *Luyando,* 46 D.P.R. 687, 689 (1934):

·. "Es claro, conforme indican los apelantes, que la hipoteca es accesoria a una obligación principal (artículo 1758 del Código Civil) y que la obligación [del deudor original] continúa insoluta y exigible hasta que sea pagada. Por supuesto, [los acreedores hipotecarios] pudieron haber elegido renunciar a su derecho hipotecario enteramente e iniciar un procedimiento exclusivamente contra [el deudor original]."

Y en *Torres* v. *Fernández*, 47 D.P.R. 845, 848 (1934), dijimos:

"Como dijimos en *Luyando* v. *Fernández*, 46 D.P.R. 689, el acreedor puede prescindir de la garantía hipotecaria y reclamar judicialmente la efectividad de la obligación mediante una acción personal."

■ Ahora bien, toda vez que Flores fue debidamente traído al presente pleito mediante demanda contra tercero, tuvo oportunidad de defenderse y no lo hizo, habiéndose dictado sentencia en rebeldía en su contra; y la evidencia aportada por la demandante demostró que él es quien debe responder de la deuda reclamada por ella, procede que se dicte sentencia en su contra a favor de la demandante imponiéndole el pago del principal de $2,000, más los intereses acumulados. Como dijimos en *Parrilla García* v. *Fuentes Fluviales*, 92 D.P.R. 168, 176 (1965):

"Si por virtud de las alegaciones una contienda se queda trabada entre el demandante y el tercero demandado y durante la vista del caso el demandante presenta prueba contra el tercero demandado y éste tiene oportunidad de contrainterrogar los testigos y presentar prueba en contrario, las alegaciones deben considerarse enmendadas a los efectos de establecer una reclamación directa del demandante contra el tercero demandado."

Véase en igual sentido *Vda. de Rivera* v. *Pueblo Supermarkets*, 102 D.P.R. 134 (1974).

De conformidad con lo anterior, *se confirmará la parte de la sentencia del Tribunal Superior que ordena la cancelación de la hipoteca de $2,000 constituida sobre la finca Núm.*

844

*10,610, inscrita al Folio 160 del Tomo 403 de Caguas; se revocará en las demás partes; y en su lugar se dictará sentencia condenando a William Flores a satisfacer a María Lameiro la suma de $2,000, más intereses desde el 26 de noviembre de 1963, hasta su pago total, a razón del ocho por ciento anual y se le impondrán las costas más la suma de $900.00 por concepto de honorarios de abogado, los cuales deberá satisfacer a la demandante, a los demandados y a la tercera demandada en partes iguales.*