UNITED STATES of America, (Veterans Administration), Plaintiff,

v.

Gerardo Luis RIVERA RIVERA, Madeline Aponte Betancourt, Defendants.

Civ. No. 86–1396 (JAF).

United States District Court, D. Puerto Rico.

Oct. 5, 1987.

José M. Pizarro Zayas, Asst. U.S. Atty., Daniel F. López Romo, U.S. Atty., San Juan, P.R., for plaintiff.

Alberto E. Lugo Janer, San Juan, P.R., for Gerardo L. Rivera Rivera.

## OPINION AND ORDER

FUSTE, District Judge.

This case is before us for summary disposition pursuant to Fed.R.Civ.P. 56. *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The same presents an issue of every-day occurrence in the modern mortgage banking business. A house is bought and a first mortgage is executed over the piece of real property in question. Subsequently, the property is sold. The purchaser agrees to abide by the terms and conditions of the existing mortgage, releasing the seller of any further obligations towards the mortgage creditor. The mortgage creditor is not usually a party to any subsequent sales. Later, a default occurs, and the bank or mortgage creditor decides to pursue a civil action. In this case, said entity impleads the second homeowner, that is, the buyer, obtains a default judgment against him on the balance of the mortgage due and owing, and decides to pursue the matter further against the original buyer and executor of the mortgage note and mortgage deed for the balance of moneys unpaid. Being faced with such action, the original purchaser alleges that the subsequent sale relieved him of all liability, the actual owner being, in his estimation, the only debtor liable to the mortgage creditor.

This scenario is common in the thousands of real estate transactions made along the lines mentioned. However, it is far from common and indeed surprising, for the long-forgotten first owner to be faced with a demand to honor the original note. We have looked at this matter under legal principles embodied in our Civil Code and mortgage law, both of Spanish origin, and find that the original owner, executor of the mortgage note, is liable to the mortgage creditor absent a *specific* release and substitution of debtor along the guidelines embodied in our corpus of civil and mortgage laws.

## I.

The specific facts are not disputed. On or about April 23, 1982, Gerardo Luis Rivera Rivera bought a residence and obtained financing under the provisions of the Veterans Benefit Act, 38 U.S.C. secs. 101–5227. A mortgage note and deed were duly executed by Rivera, Deed No. 31, of April 23, 1982, the notary public being William Feliciano Ruiz. The mortgage was duly recorded at the Registry of Property of Caguas, Section I, at page 127, Volume 1109, property number 22,356, 12th recording.

On August 24, 1982, the Veterans Administration sold the negotiable mortgage note to Prudential Mortgage Corporation, subject to repurchase under 38 C.F.R. sec. 36.420 series. On November 5, 1984, Gerardo Luis Rivera Rivera sold the property to Madeline Aponte Betancourt, through Deed No. 141, of said date, the notary public being Jorge Puig. The deed was duly registered. Through the same, Madeline Aponte Betancourt assumed each and every obligation of the mortgage note and deed originally executed by Rivera. At the time Aponte Betancourt decided to buy the property and assume the mentioned obligations, Prudential and/or the United States (Veterans Administration) were asked to or consented to formally, by deed or otherwise, release Rivera of liability under the mortgage note.

Madeline Aponte Betancourt fell in arrears and the Veterans Administration reacquired the defaulted note from Prudential. The United States is now the holder in due course of the original mortgage note, which remains negotiable. No restrictive or limiting endorsements appear from said document. The note contains no evidence that the government consented to the substitution of the original mortgage-note debtor.[1] Rivera is still the executor

1. Actually, at the time of the sale between Rivera and Aponte Betancourt, the holder in due course of the mortgage note was Prudential and, therefore, Prudential would have had to endorse the note consenting to the substitution of Aponte Betancourt has guarantor of the original debt. Such consent, however, would require prior approval of the Veterans Administration

pursuant to 38 C.F.R. sec. 36.4277, Release of Security:

(e) The release of the personal liability of any obligor resultant from the act or omission of any holder without the prior approval of the Administrator shall release the obligation of the Administrator as guarantor....

By the terms of this regulation, the Veterans Administration could have refused to repur-

and principal mortgagor in the eyes of the government.

Both Rivera and Aponte Betancourt were sued by the United States. 28 U.S.C. sec. 1345. Aponte Betancourt failed to plead or otherwise defend and a judgment by default on the mortgage was entered against her. Codefendant Rivera alleges that the government has no recourse against him because Prudential allowed Aponte Betancourt to take over the mortgage monthly payments, charging her a modest $45.00 fee for "change of client." Aponte Betancourt also completed a "change-of-ownership form" and once, Prudential Claims Division wrote to the U.S. Attorney's Office after this case was filed confirming that Aponte Betancourt appeared as new owner. Rivera was no longer Prudential's client. What really happened was that Aponte Betancourt succeeded in obtaining from Prudential's mortgage department a mortgage payment book in her name. Mass production of modern mortgage banking allows this to happen, even though the mortgage banker may or may not be the holder in due course of the note. It is all part of the servicing of the mortgage for purposes of keeping records of payments up to date.

## II.

Book Four of the Civil Code, 31 L.P.R.A. secs. 2991–5061, regulates obligations and contracts. Like in any other jurisdiction, loan agreements are regulated as legal obligations. In addition thereto, the Code mentions that a mortgage may be constituted over real property and that the same must be recorded in the Registry of Property. 31 L.P.R.A. secs. 5001–5048. A mortgage is not a typical civil-law "derecho real" (real right). It is, properly speaking, a "derecho real accesorio" (accessorial or subsidiary real right)—a guarantee which complements the principal obligation represented by the mortgage note. 31 L.P.R.A. sec. 5001. As a result thereof, when somebody like Rivera bought the house and executed a mortgage note and deed, he actually entered into and assumed two obligations, a personal or principal obligation,

and a mortgage accessorial or subsidiary guarantee. *See* Roca Sastre, *Derecho Hipotecario IV*, Ch. LXXVIII at 701–15 (Ed. Bosch, Barcelona, 1948).

Thus, when Rivera sold the house to Aponte Betancourt, the latter intended to assume both obligations. Rivera understood that he was relieved of further liability. However, this was not the case, inasmuch as pursuant to article 1159 of the Puerto Rico Civil Code, equivalent to article 1205 of the Spanish Civil Code, 31 L.P.R.A. sec. 3243, novation, consisting of the substitution of a subsequent debtor (Aponte Betancourt) in the place of the original one (Rivera), may be made without the knowledge of the latter, *but not* without the consent of the creditor. *See* J. Puig Brutau, *Fundamentos de Derecho Civil*, Vol. III No. 3 at 161–73 (Ed. Bosch, Barcelona, 1974).

In practical terms, when Rivera was the owner, the mortgage creditor had three courses of action against him if he defaulted. Rivera could be sued on the principal obligation only, or be sued in execution of mortgage, or under both theories of recovery. After he sold the property to Aponte Betancourt, the mortgage creditor could sue Aponte Betancourt on the mortgage she assumed, on the personal obligation she voluntarily created towards the mortgage creditor (not, however, on the mortgage note, inasmuch as she did not sign it) or on both theories of recovery. The mortgage creditor still had the option of relating back to Rivera's principal obligation under the mortgage note if need be. This is precisely what happened here.

## III.

The Supreme Court of Puerto Rico has dealt with this situation on several occasions. An example is the case of *Fernández v. Luyando*, 46 P.R.R. 664 (1934). Luyando and his wife owed $1,000 to Guillermo Fernández Pérez and $2,000 to Antonio Fernández Pérez and, to secure the debt, Luyando and his wife executed a mortgage to the Fernández brothers on a given piece

chase the note if Prudential had released Rivera without its prior approval.

of property. Thereafter, Luyando and his wife sold the property to Ramón Díaz, who sold it to Vicente Tellado, who, in turn, sold it to Ulpiano Hernández. The mortgage debt matured and was not paid. Thereupon, Guillermo and Antonio Fernández presented an ordinary action against Ulpiano Hernández, who was the actual possessor of the property and against Luyando as original debtor. The theory of recovery was that the mortgaged property should respond for the debt, so far as it could, and that Luyando, the original debtor, should be held to pay the balance. The Supreme Court sanctioned such argument, pointing out that a mortgage is subsidiary to the principal obligation and that the obligation of Luyando remained outstanding and demandable until paid. The Fernández brothers might have elected to forego their mortgage right entirely and sue Luyando exclusively.

Subsequently, the Supreme Court decided a related case, *Luyando v. Díaz*, 46 P.R.R. 668 (1934), where regarding the same transaction, it was held that Luyando, as original debtor, if called to pay under the principal obligation, could sue the purchaser of the mortgaged property who indeed was the culprit that gave rise to the mortgage creditor suing him on the principal obligation, all because of his failure to comply with his express commitment to honor the mortgage.

Recently, the Supreme Court restated the *Luyando v. Díaz* rule in *Lameiro v. Dávila*, 103 D.P.R. 834, 843 (1975).

It is clear, as appellants point out, that a mortgage is subsidiary to the principal obligation (Section 1758 of the Civil Code) and that the obligation of [the original debtor] remains unsatisfied and demandable until paid. Of course, the [mortgagees] might have elected to forego their mortgage right entirely and have begun a proceeding exclusively against [the original debtor].

## IV.

Lastly, we touch on article 1159 of the Puerto Rico Civil Code, 31 L.P.R.A. sec. 3243, which is the only viable defense alternative to Rivera. That specific article of the Civil Code would relieve Rivera of liability if substitution of the debtor (Rivera) was made with the consent of the creditor. In this respect, the case of *Teachers Annuity v. Sociedad de Gananciales*, 115 D.P.R. 277 (1984), appears to be on point.

*Teachers Annuity* gives us the elements of judgment to assess whether in a given case, and in the context of modern mortgage banking and servicing, such as the present one, the mortgage creditor has consented to the substitution of the debtor. In *Teachers*, the Puerto Rico Supreme Court specifically states that an updated view of the applicable doctrine (assumption-of-debt principles), as it applies to the modern mortgage banking transactions, does not alter the rule which requires express or clearly-implied consent to debtor substitution. In *Teachers*, it was held that the mortgage creditor's involvement with the subsequent purchaser, consisting of accepting payments from him and having written to the subsequent purchaser on the balance outstanding would not be the implied or tacit consent which the Civil Code requires. Consent, whether expressed or implied, is a matter of intention that is not to be lightly inferred. *Teachers*, 115 D.P.R. at 289–91. More so, the Mortgage Law of 1979, in section 164, 30 L.P.R.A. sec. 2560, also embodies the hard-to-beat requirement of consent.

Here, as in *Teachers*, there is no evidence that the Veterans' Administration or the United States, as holder in due course of a negotiable instrument subscribed only by Rivera, gave such consent or was bound by any consent given by Prudential. Furthermore, the government is entitled to the presumptions afforded to it as holder in due course, in good faith under the Uniform Negotiable Instruments law, 19 L.P.R.A. secs. 91–99, seen in light of 38 C.F.R. sec. 36.420 series.

Judgment shall be entered against Gerardo Luis Rivera Rivera, on the complaint, in the amount of $34,888.29 of aggregate principal, plus $6,930.00 of interest accrued as of May 1, 1986, and thereafter until paid at the daily rate of $14.78 per day, plus

insurance premium, taxes, advances, late charges, costs, court costs and expenses, disbursements, and attorney's fees as contemplated in the mortgage deed that gave rise to the principal obligation, i.e., the mortgage note. The record will reflect that the default judgment entered against Madeline Aponte Betancourt on January 5, 1987 stands. *See* docket document No. 8. Of course, Rivera is entitled to a credit on the amount realized as a result of the execution of mortgage and sale of the property. Otherwise, the government would be unjustly enriched. Velázquez, *Las Obligaciones*, secs. 228–29 (Equity Publ. Co. 1964). This disposition is without prejudice of Rivera instituting an action against Aponte Betancourt under the guidelines of *Luyando v. Díaz*, 46 P.R.R. 668 (1934).

IT IS SO ORDERED.